491 So.2d 596 (1986)
Larry MITCHELL, Appellant,
v.
STATE of Florida, Appellee.
Case No. BD-286, BE-2.
District Court of Appeal of Florida, First District.
July 17, 1986.
*597 Michael E. Allen, Public Defender, and Glenna Joyce Reeves, Asst. Public Defender, Tallahassee, for appellant.
Jim Smith, Atty. Gen., and John W. Tiedemann, Asst. Atty. Gen., Tallahassee, for appellee.
NIMMONS, Judge.
Mitchell was charged with five counts of violating Section 410.11(1), Florida Statutes (1981) (aggravated abuse or exploitation of the aged), and two counts of violating Section 782.07, Florida Statutes (1981) (manslaughter by culpable negligence). After a jury trial, he was convicted of four of the counts under Section 410.11(1) and two counts of the lesser offense of culpable negligence under Section 784.05. Appellant raises several points on appeal, one of which merits discussion. We affirm.
The subject offenses occurred at the Heritage Elderly Care Facility (Heritage), a licensed adult congregate living facility (ACLF) owned and operated by Mitchell. ACLF's are required by law to be licensed by the Department of Health and Rehabilitative Services (HRS). Such licensure entitles the licensee to care for elderly persons who do not require the degree of care provided by a nursing home.
The subject criminal charges centered around Mitchell's treatment of several residents of the Heritage between July of 1981 and December of 1982, and the subsequent death of two of them. As to each such resident, Mitchell was charged with a violation of Section 410.11(1), Florida Statutes (1981), which provides:
Any person who knowingly or willfully abuses, neglects, exploits, or maltreats an individual suffering from the infirmities of aging, and in so doing, causes great bodily harm, permanent disfigurement, or permanent disability to such person is guilty of a felony in the third degree... .
Count II of the information is typical of the five counts charging such violations:
[The state attorney], prosecuting for the STATE OF FLORIDA, further information makes that LARRY MITCHELL, between October 1, 1981 and May 17, 1982 and divers days intervening, at and in Escambia County, Florida, did unlawfully and knowingly abuse, neglect, exploit, or maltreat [victim's name], an individual suffering from the infirmities of aging, *598 and in so doing caused great bodily harm, permanent disfigurement, or permanent disability to said [victim], in violation of Section 410.11, Florida Statutes.
Two of the victims of the above referenced counts died and the state accordingly charged Mitchell with two counts of manslaughter by culpable negligence.
Mitchell contends that the trial court reversibly erred in permitting the state to introduce various items of testimony and evidence which may appropriately be categorized as: (1) testimony relating to the treatment of Heritage residents other than the named victims; (2) evidence of financial transactions between Mitchell and relatives of the victims; (3) evidence of financial dealings with others; and (4) evidence of a similar shoddy operation by Mitchell in Iowa.
Evidence of other crimes, wrongs and acts is admissible if it is probative of a material issue other than the bad character or propensity of an individual. Williams v. State, 110 So.2d 654 (Fla. 1959). The so-called "Williams Rule" states a general rule of admissibility of relevant evidence even though the evidence may indicate that the accused has committed other uncharged crimes or may otherwise reflect adversely upon the accused's character. Section 90.404(2)(a), Florida Statutes[1], purports to codify the Williams Rule. The statute lists several purposes for which such evidence is deemed to be admissible, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. However, as Professor Ehrhardt points out, the statutory list is not mutually exclusive. EHRHARDT, FLORIDA EVIDENCE § 404.9 (2d Ed. 1984).
Williams Rule evidence is often referred to as "similar fact" evidence. Id. at 117. Indeed, Section 404(2)(a) uses that descriptive phrase. Such can be misleading for it is clear that some kinds of evidence admissible under the Williams Rule and under the above statute  i.e. evidence indicating that the accused has committed other crimes or reflecting adversely upon the accused's character  may not necessarily entail any factual similarities with the crime charged or with any other fact involved in the case.
The Williams Rule  now a firmly entrenched principle in the jurisprudence of our State  is easily articulated in the abstract. However, because the Rule has frequently been misunderstood, it has become notoriously difficult in the application.
With the above Williams Rule observations and principles as background, we now direct our attention to the Williams evidence with which the trial court dealt in the instant case. Mitchell contends that the sole relevancy of the categories of evidence enumerated above was to prove his bad character or propensity for the commission of the charged crimes. We disagree.

TREATMENT OF OTHER RESIDENTS
The state introduced evidence showing that the victims were neglected and mistreated by Mitchell's staff to the extent that they developed serious debilitating bed sores which could have been avoided or minimized with proper care. The trial court also allowed the state to introduce evidence not directly related to the care or condition of the named victims. The testimony related to the general conditions of the ACLF, including roach infestation, failure to follow dietary menus and nutritional guides, inadequacies in the facilities and lack of adequate staff or training. Some of the witnesses mentioned specific examples of poor care which included references to some victims not named in the information.
*599 We are of the view that the evidence in this category was admissible to show knowledge and absence of mistake on the part of Mitchell. A position taken by Mitchell at trial was that the conditions specifically relating to the named victims were isolated and unknown to Mitchell. The defense pointed to testimony that bedsores can occasionally develop in a properly supervised facility. Evidence of the prevalence of the conditions and improper treatment throughout the Heritage was relevant to counter an inference that the conditions giving rise to the named victims' injuries were isolated instances beyond the defendant's knowledge and control. In proving that the care of these victims amounted to abuse and exploitation, the state could not fairly be expected to keep out testimony of general activities of Mitchell and his staff which affected not only these victims but other residents in the facility as well.[2]

FINANCIAL TRANSACTIONS BETWEEN MITCHELL AND RELATIVES OF THE 
VICTIMS
The state was allowed to ask each witness who was a relative of one of the victims how much he paid for the care Mitchell agreed to provide. At least one witness mentioned being overcharged by Mitchell. This evidence was properly admissible to prove an element of the offense, "exploitation". Section 410.102, Florida Statutes (1981), gives the following definition:
(4) "Exploitation" means an unjust or improper use of another person for one's own profit or advantage.
One of the states's theories was that Mitchell used the victims for economic gain in a manner that caused great bodily harm. Evidence that Mitchell charged or overcharged relatives of the victims to provide care for the victims which he failed to provide was properly admitted.

FINANCIAL DEALINGS WITH OTHERS
A doctor who was to train Mitchell's staff in caring for the aged residents testified that he was unable to train them because Mitchell failed to pay him. The owner of the property leased by Mitchell for use as the Heritage testified about renovations he made to the property so that it could be used for an ACLF. He also testified to rental payment arrangements with Mitchell. Records custodians from several banks testified about totals and ending balances in Mitchell's business accounts. A witness also testified to arrangements between Mitchell and a friend whereby the friend purchased from Mitchell an equipment leasing company which owned the beds and other equipment at the Heritage and leased the equipment to the residents. Several ex-employees briefly referred to having received from Mitchell paychecks which bounced.
The testimony of the doctor who was to train the staff was relevant to show that Mitchell's operation was inadequate to provide care for the residents and to show that Mitchell was aware of such inadequacy. The testimony relating to Mitchell's business accounts, his financial arrangements with the property owner, ex-employees, and others was admissible to show that Mitchell was having trouble meeting his financial obligations and thus relevant to the establishment of a motive for the neglect of the facility and its residents. See EHRHARDT, supra, § 404.13.

SIMILAR FACILITY IN IOWA
The state, through a registered nurse who was a records keeper for the Iowa State Department of Health, was permitted to introduce records showing that Mitchell was the operator of an elderly care *600 facility in Iowa until that state, shortly before Mitchell commenced operation of the Heritage, denied license renewal based upon numerous grounds arising out of complaints similar to those involved at the Heritage. Mitchell's defense to the substantial evidence of the neglect and abuse of the Heritage victims, was that he was unaware of the conditions in his facility. We believe the evidence regarding his very recent experience with his prior facility in Iowa was relevant to show that the defendant had special reason to have had his attention drawn to the day-to-day management and care of the residents at the Heritage and that he was therefore, contrary to his assertions, knowledgeable of the conditions at the Heritage.[3]

"FEATURE OF TRIAL"
Having concluded that the above categories of evidence were relevant and properly admitted, we turn to appellant's argument that the Williams Rule evidence was so pervasive that it became a prohibited "feature of the trial." See Williams v. State, 117 So.2d 473 (Fla. 1960); Reyes v. State, 253 So.2d 907 (Fla. 1st DCA 1971). After careful review of the entire record in this case, we are of the view that, because of the relatively small amount of evidence of other bad acts and the manner in which it was presented, such evidence did not reach the proscribed level under the "feature of the trial" standard. The overwhelming evidence of deplorable conditions and human suffering directly attributable to Mitchell's failure to provide simple routine care of his aged charges far outweighs any prejudice that might have been caused by the cumulative effect of the Williams Rule evidence. We note that, with the exception of one of the counts (Count 3  one of the Section 410.11 charges), appellant has raised no argument regarding sufficiency of the evidence to support the convictions. As to Count 3, we find that the evidence was sufficient to support the trial court's denial of the defendant's motion for judgment of acquittal.
We have considered appellant's other points and find them to be without merit.
AFFIRMED.
SHIVERS and JOANOS, JJ., concur.
NOTES
[1] Section 90.404(2)(a) provides:

(2) OTHER CRIMES, WRONGS, OR ACTS. 
(a) Similar fact evidence of other crimes, wrongs or acts is admissible when relevant to prove a material fact in issue, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, but is inadmissible when the evidence is relevant solely to prove bad character or propensity.
[2] Compare Justus v. State, 438 So.2d 358 (Fla. 1983) and Warren v. State, 443 So.2d 381 (Fla. 1st DCA 1983) with Pack v. State, 360 So.2d 1307 (Fla. 2nd DCA 1978). In the latter case, the evidence of collateral bad acts served solely to establish the bad character of the defendant. In the former cases, as in the present case, the evidence of other bad acts was relevant to understanding the occurrence of events and was relevant to establishing knowledge, intent and absence of mistake.
[3] See footnote 2, supra.