520 So.2d 665 (1988)
Jimmy Birl CALLOWAY, Appellant,
v.
STATE of Florida, Appellee.
No. BR-104.
District Court of Appeal of Florida, First District.
February 24, 1988.
*666 Michael E. Allen, Public Defender, Terry P. Lewis, Sp. Asst. Public Defender, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen., Bradford Thomas, Asst. Atty. Gen., Tallahassee, for appellee.
NIMMONS, Judge.
The defendant was convicted of two counts of sexual battery perpetrated on his stepdaughter while he was in a position of familial, custodial, or official authority. The defendant raises seven issues on appeal, three of which merit discussion. We affirm.
In the first issue, defendant contends that the trial court erred in failing to require the state to narrow the period of time within which the defendant was charged with sexually battering his stepdaughter. The first count covered the period between October 1, 1984 and May 31, 1985. The second count covered the period between September 30, 1982 and September 30, 1984.
Three months prior to trial, a hearing was held on the defendant's motion for statement of particulars in which the defense sought more definite dates as to the offenses charged. The state explained to the court that the defendant had sexually abused his stepchild over a period of years and that the state had been unable to obtain any more specific time periods from the child victim. Defense counsel said that he had been unable to obtain specific dates from the victim via her deposition. The prosecutor said that he would "go back and try to talk to the victim some more."
At the hearing, the trial court required the state to make reasonable efforts to narrow the time periods. The judge stated:
All right. I'll tell you what I'm going to ask you to do. The Child Protection Team of which you spoke, I'm going to ask that you ask the people on the Child Protection Team to see if they can't at least in connection with some known dates, for instance birthdays, to do the best they can. I agree with you. It is not the easiest thing in the world when you have got a small child like that. But see if they can't pin some times down just a little bit better because I see we have got here something going back to approximately 1982.
* * * * * *
But I do want to at least try to get something a little bit pinned down in terms of specific dates that can be used as points of reference for her. You know, school is out in June. Was it while vacation time? Was it while school was still going on? Things like that. Anything to help pin it down a little bit.
All right. That's all I'm going to require at this time. Do the best you can. I'll be available, Mr. Minerva [defense counsel]. Do what you can, Edgar [prosecutor].
The only further activity which appears in the record regarding the above issue is a statement of particulars filed a month later by the state. As to count one, the statement of particulars stated the same inclusive dates as the information while the time range of count two was narrowed by 2 1/2 months. No objection was raised by the defense directed to the statement of particulars.
It would be inappropriate for us to assume that it would have been futile for the defendant to have attacked the adequacy of the statement of particulars. It is obvious from the judge's above comments that he was sympathetic with the defendant's efforts seeking a narrowing of the time frames. Indeed, the gist of his final remark was an invitation to defense counsel to seek relief from the court should he be dissatisfied with the state's response to the court's directives. After the filing of the statement of particulars, several unrelated motions were heard three weeks prior to the trial, but nothing was said which could even remotely be construed as an attack upon the statement of particulars. We hold that the defendant has thus waived any right to complain on appeal *667 concerning the dates set forth in the statement of particulars.
The defendant also claims that the trial court erred in receiving, over objection, evidence of collateral crimes involving two other girls during the time period covered by the information. Both girls are roughly the same age as the victim.[1]
Kim, a friend of the victim, testified that she spent the night with the victim at the defendant's home. She said that the defendant came in the victim's bedroom where Kim was situated, pushed her on the bed and commenced tickling her and touching her breasts. Kim pushed him off of her. Apparently he ceased this activity when others entered the room after she pushed him off. On a later occasion when the victim and Kim were together, Kim asked the victim if the defendant had ever tried to do anything like that to her (the victim). The victim told Kim that the defendant had done the same thing to her and had made her (the victim) engage in sexual acts.[2]
On another occasion, a girl named Shan, the victim's aunt,[3] was spending the night at the defendant's home and was in bed with the victim when the defendant entered the bedroom and touched Shan's breasts and vaginal area. Shan pushed him away and told him to leave her alone. The defendant did the same thing to Shan the next night, again while she was in the victim's bed. Shan testified that on the following day she told the victim what the defendant had done, and she asked the victim if the defendant had ever done that to her. According to Shan, the victim responded in the affirmative.[4]
Recently, the Florida Supreme Court addressed the problem of Williams Rule[5] evidence in sexual battery cases involving the familial setting. In Heuring v. State, 513 So.2d 122 (Fla. 1987), the court stated:
Cases involving sexual battery committed within the familial context present special problems. The victim knows the perpetrator, e.g., a parent, and identity is not an issue. The victim is typically the sole eye witness and corroborative evidence is scant. Credibility becomes the focal issue. In such cases, some courts have in effect relaxed the strict standard normally applicable to similar fact evidence. These courts have allowed evidence of a parent's sexual battery on another family member as relevant to modus operandi, scheme, plan, or design, even though the distinction between sexual design and sexual disposition is often tenuous. We find that the better approach treats similar fact evidence as simply relevant to corroborate the victim's testimony, and recognizes that in such cases the evidence's probative value outweighs its prejudicial effect. See Comment, Defining Standards for Determining the Admissibility of Evidence of Other Sex Offenses, 25 U.C.L.A.L.Rev. 261 (1977). The court did not err, in the instant case, in allowing evidence of Heuring's sexual battery of his daughter, Anita.
Id. at 125, 126. See also Beasley v. State, 518 So.2d 917 (Fla. 1988). In the instant case, the victim was the sole eye witness to the alleged offenses and corroborative evidence was scant. Credibility of the victim was the focal issue in the case, the defense being predicated upon the defendant's claim that the victim concocted her story because of reaction on her part to his exercise of parental discipline over her and because she preferred living with her real father. This defense started materializing with defense counsel's opening statement prior to the presentation of the state's casein-chief.
The defendant asserts that the collateral crimes involving Kim and Shan were not *668 sufficiently similar to the offenses charged to be admissible. We disagree. The rigidity with which the similarity requirement is applied in cases wherein the collateral crimes are introduced to prove a fact such as the identity of the perpetrator is not necessary in other situations such as the instant case where the evidence is relevant to corroborate the victim's testimony. See Mitchell v. State, 491 So.2d 596, 598 (Fla. 1st DCA 1986); Ehrhardt, Florida Evidence § 404.9 (2d Ed. 1984). We believe there was sufficient logical connection between the collateral offenses and the charged offenses to permit introduction for the purpose of corroboration of the child victim's testimony.
The defendant also contends that the trial court erred in allowing testimony of a psychologist's expert opinion that the victim demonstrated symptoms indicative of "child sexual abuse syndrome." We affirm on the authority of Ward v. State, 519 So.2d 1082 (Fla. 1st DCA 1988).[6]
We have examined the remaining issues raised by the defendant and find them to be without merit.
AFFIRMED.
SMITH, C.J., and ERVIN, J., concur.
NOTES
[1] The victim's date of birth is December 7, 1969.
[2] No objection was interposed regarding the conversations between the victim and Kim.
[3] Although Shan was the victim's aunt (the younger sister of the victim's mother), Shan was roughly the same age as the victim.
[4] No objection was interposed regarding the conversation between the victim and Shan.
[5] Williams v. State, 110 So.2d 654 (Fla. 1959) cert. denied 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959).
[6] We note that the expert in ward is the same as the one who testified in the instant case. We also note that the opinions and bases therefor articulated by the expert in ward are remarkably similar to those involved in the instant case as are the attacks leveled by the defense against such testimony.