585 So.2d 359 (1991)
William A. MADDRY, Appellant,
v.
STATE of Florida, Appellee.
No. 90-1859.
District Court of Appeal of Florida, First District.
August 8, 1991.
Rehearing Denied October 2, 1991.
*360 William R. Slaughter, II, of Slaughter and Slaughter, Live Oak, for appellant.
Robert A. Butterworth, Atty. Gen., and Laura Rush, Asst. Atty. Gen., Tallahassee, for appellee.
MINER, Judge.
Arguing that the trial court abused its discretion in admitting so-called Williams rule testimony, appellant challenges his convictions on three counts of sexual battery of his 13 year old daughter while in a position of familial authority. Finding that this issue was not preserved for appellate review, we affirm appellant's convictions.
Prior to appellant's trial, the state filed notice that it intended to introduce evidence that while in a position of familial authority over her, appellant engaged in sexual activity with one K.S., his 17 year old illegitimate daughter. Defense counsel filed a motion in limine to exclude such testimony. At a hearing on the motion, counsel argued that there was no competent evidence to show that appellant was in fact the biological father of K.S., without which showing such testimony would be inadmissible as demonstrating only propensity and bad character and, further, that there was no evidence to show that the sexual conduct described by K.S. was illegal under the laws of New York or Pennsylvania, the states where such conduct was alleged to have taken place. Counsel concluded:
The bottom line is, we don't believe that there's been a sufficient showing of family, nor has there been a sufficient showing that this man was in a position of familial or custodial authority during the relevant period of time testified to by [K.S.].
The trial court rejected counsel's "family" arguments and, on the record, ruled that such testimony would be admitted and spelled out its reasoning for the ruling. K.S. testified at trial in accordance with the state's notice.
On appeal, Maddry's appellate counsel argues that K.S.'s testimony was "not relevant to any material issue, nor did the testimony reveal any factual or characteristic similarity between [K.S.'s] sexual encounter with the Appellant and the alleged sexual activity of the Appellant with the victim, nor did the testimony serve to corroborate the testimony of the victim."
Appellant's arguments on appeal are wholly different than those made by defense counsel below. Indeed, the arguments advanced below are not urged before us. An appellate court will consider the grounds or objections to the admissibility of evidence as were specifically made in the trial court and cannot consider those objections to admissibility of evidence which are raised for the first time on appeal. See Hoodless v. Jernigan, 46 Fla. 213, 35 So. 656 (1903); Lineberger v. Domino Canning Co., 68 So.2d 357 (1953); *361 Chaudoin v. State, 118 So.2d 569 (Fla. 2d DCA 1960); Jennings v. Stewart, 308 So.2d 611 (Fla. 3d DCA 1975); and Tabasky v. Dreyfuss, 350 So.2d 520 (Fla. 3d DCA 1977). Here, the record clearly reflects that appellant's only arguments below against the admissibility of the challenged evidence are arguments going to what he must have believed to be the proper predicate for its admission, i.e. failure to show as a condition precedent to its admission that appellant was K.S.'s biological father and that the conduct K.S. described was against the law in New York and/or Pennsylvania. Counsel did not argue lack of relevance to prove or disprove a material fact or lack of similarity or that such evidence was not corroborative of the victim's testimony. Such objections as counsel did make were properly overruled by the court and the fact that the court grounded its pre-trial ruling on bases not argued by counsel does not relieve appellant of the consequence of his failure to state the proper grounds for his objection below.
Thus, having failed to raise the proper grounds for his objection to the challenged evidence below, he is precluded from raising any new grounds or objections for the first time on appeal. Accordingly, his convictions are affirmed.
NIMMONS, J., concurs.
BARFIELD, J., dissents with opinion.
BARFIELD, Judge, dissenting:
I would find that the trial court abused its discretion in allowing K.S. to testify to sexual relations with appellant. It is clear from the record that the issue of the lack of similarity between this Williams[1] rule evidence and the facts of the case at issue was raised and ruled upon below.
The thirteen-year-old victim's stepmother, appellant's now estranged wife and the mother of his two youngest daughters, corroborated the victim's testimony regarding one of the three alleged incidents. However, the testimony of several relatives that the victim had recanted her accusations as lies intended to get her stepmother to leave, a letter from the victim to her grandmother to that effect, and the testimony of a neighbor that the victim had asked for her help in getting the stepmother to leave, placed the victim's credibility at issue.
The state gave notice that it intended to introduce evidence that in May and June 1985, while in a position of familial authority, appellant had engaged in sexual activity with K.S., his illegitimate daughter. At the hearing on appellant's motion in limine, K.S. testified that she was born in Missouri on August 25, 1967. After her mother died in 1980, an aunt told her that her real father was not her mother's husband, but a truck driver named Bill Maddry. When she was fifteen, she went looking for her father. When she was seventeen, she accepted a ride with appellant at a truck stop near Rochester, New York. She travelled with him for several weeks, ending up in Rochester on July 7, 1985. She then sent for her personal effects from Missouri, which included a photo album. After recognizing pictures of her mother and brother, appellant told her that he was her father. Afterwards, they continued to live together and to have sexual relations.
On cross-examination, K.S. testified that she and appellant lived together for about a month in Rochester in March 1985, that appellant had acted like a father, and that after he admitted being her father, he told her that he "wanted to be a father figure to me and still have sex with me." On redirect, she testified that she had recently spoken to appellant by telephone and had told him she was thinking of getting married, whereupon he told her "if I needed a father for my kids, he would be a father for my kids."
Appellant's counsel argued that her testimony was not admissible because appellant was charged with sexual activity while in a position of familial or custodial authority, but there was no competent evidence that he was the biological father of K.S., and "if *362 in fact she is not the child of Mr. Maddry, then her testimony does nothing more than show propensity and bad character on behalf of Mr. Maddry." He also asserted that there was no showing "that the conduct, the sexual conduct described by [K.S.] was illegal where it took place," arguing that there was no showing of what the law was in New York and Pennsylvania. He concluded, "The bottom line is, we don't believe that there's been a sufficient showing of family, nor has there been a sufficient showing that this man was in a position of familial or custodial authority during the relevant period of time testified to by [K.S.]."
The State cited several cases in which the courts applied an "expanded" Williams rule in child sexual battery cases, arguing that "the judge merely must decide is there enough evidence that the jury, if believing Williams' Rule victims, could find that the activity took place." Defense replied that there had been no competent showing of family, "the gravamen of this whole thing." The trial court found:
[T]he evidence sought is more than solely to prove the defendant's bad character and propensity, and it is relevant to prove material facts in this issue, and further that the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice to the defendant and it is not needless presentation of cumulative evidence and that the evidence does tend to establish motive, intent, preparation, plan, knowledge, modus operandi, and along those lines, and the court will allow the testimony.
The court acknowledged defense counsel's standing objection to all trial testimony of the witness.
Appellant testified that he had never engaged in sexual activity with the victim, that she and his wife had fought a lot after she came to live with them in 1988, that "it's a good possibility" that K.S. is his daughter, and that "there was no physical contact between that girl and myself, once I realized there was a possibility she was my daughter." The jury found appellant guilty of three counts of sexual battery by a person in familial authority. He was sentenced to consecutive ten and twelve year terms of imprisonment.
Appellant's counsel argues that the testimony of K.S. should not have been allowed because it "was not relevant to any material issue, nor did the testimony reveal any factual or characteristic similarity between [her] sexual encounters with the Appellant and the alleged sexual activity of the Appellant with the victim, nor did the testimony serve to corroborate the testimony of the victim." He argues that the "sole and singular effect" of the testimony "was to prove bad character and propensity on the part of the Appellant" and that this deprived appellant of a fair trial.
The State urges this court to consider the proffered testimony in determining whether the trial court erred in denying the motion in limine, and argues that this testimony was relevant to corroborate the victim's testimony, citing Heuring v. State, 513 So.2d 122 (Fla. 1987), and Calloway v. State, 520 So.2d 665 (Fla. 1st DCA), rev. den., 529 So.2d 693 (Fla. 1988), for an expanded standard of admissibility of collateral evidence in sexual battery cases. The State argues that K.S. and appellant both believed he was her father, and continued to live together with him acting as a father figure while having sexual relations with her. It contends that the circumstances of appellant's sexual activities with K.S. "bore a significant logical connection with the charged offenses to permit introduction of [her] testimony," i.e., "appellant, in both instances, while occupying the position of a father figure, clearly did not regard the existence of an actual or presumed father-daughter relationship to be an impediment to sexual activities with his daughters." The State labels as "irrelevant" the fact that in August 1985 K.S. turned eighteen, the age of legal majority to consent to sexual relations in New York, because the Florida statute under which appellant was charged eliminates as a defense the consent of the child victim. Finally, the State argues that any error in admitting the testimony was harmless because evidence of appellant's guilt, "if not overwhelming, was very strong."
*363 Appellant's counsel replies that the trial testimony of K.S., to which there was a continuing objection, and which this court must consider, contained omissions[2] which render it "relevant, if at all, solely to prove both directly and by innuendo, the bad character or propensity of the Appellant." He argues that K.S. had the capacity to consent to sexual activity, so that her testimony was inadmissible where the issue was not consent, citing Phillips v. State, 350 So.2d 837 (Fla. 1st DCA 1977), and Banks v. State, 298 So.2d 543 (Fla. 1st DCA 1974), cert. den., State v. Banks, 308 So.2d 538 (Fla. 1975). He distinguishes Calloway on its facts, which he asserts bore a much greater similarity to the crime charged, and argues that the error was not harmless, since "the extraordinary `fairy tale' circumstances of [her] search for a long-lost father, and the events which transpired after she met the Appellant became a feature of Appellant's trial."
The State is correct that it did not have to prove that appellant is in fact the biological father of K.S., since appellant admits he acted as her father and acknowledged her as his daughter. He and K.S. disagree on whether he continued to have sexual relations with her after he discovered that he was her father. However, the admissibility of her testimony does not turn on this determination.
In Heuring, the supreme court acknowledged that similar fact evidence of collateral offenses is inherently prejudicial and therefore must meet a strict standard of relevance: "The charged and collateral offenses must be not only strikingly similar, but they must also share some unique characteristic or combination of characteristics which sets them apart from other offenses" and in addition, "the evidence must be relevant to a material fact in issue such as identity, intent, motive, opportunity, plan, knowledge, or absence of mistake or accident." 513 So.2d at 124. The court noted that in cases involving sexual battery committed within the familial context, credibility becomes the focal issue, and that in such cases some courts have in effect relaxed this strict standard and "have allowed evidence of a parent's sexual battery of another family member as relevant to modus operandi, scheme, plan, or design, even though the distinction between sexual design and sexual disposition is often tenuous." The court found that "the better approach treats similar fact evidence as simply relevant to corroborate the victim's testimony, and recognizes that in such cases the evidence's probative value outweighs its prejudicial effect." Id. at 125. In Heuring, the court approved admission of evidence of the defendant's sexual battery of another daughter twenty years before the charged offenses, when the older daughter was approximately the same age as the later victim.
In Calloway, involving the sexual battery of a stepdaughter, this court ruled admissible evidence of sexual activity, during the same time period, involving two girls about the same age as the victim, citing Heuring. This court found the credibility of the victim to be the focal issue in the case, and rejected the argument that the collateral crimes were not sufficiently similar to the charged offenses: "The rigidity with which the similarity requirement is applied in cases wherein the collateral crimes are introduced to prove a fact such as the identity of the perpetrator is not necessary in other situations such as the instant case where the evidence is relevant to corroborate the victim's testimony," citing Mitchell v. State, 491 So.2d 596 (Fla. 1st DCA), rev. den., 500 So.2d 545 (Fla. 1986).[3] It found that "there was sufficient *364 logical connection between the collateral offenses and the charged offenses to permit introduction for the purpose of corroboration of the child victim's testimony." 520 So.2d at 668.
Admittedly, Heuring and its progeny[4] have relaxed the strict standard usually applied to collateral crimes evidence in cases involving sexual battery in a familial context. However, I do not believe these cases have completely done away with the relevancy requirement.[5] The offenses in such a case must still be sufficiently similar so as to provide a logical corroboration of the victim's testimony. The case at issue seems beyond the reach of even the expanded Williams rule, and given the circumstances, the challenged testimony would appear to have been introduced to show that appellant has a propensity to engage in sexual activities with young girls, notwithstanding his father-daughter relationship with them.
I cannot agree with the signers of the majority opinion that this issue was not raised by appellant below, and was therefore not preserved for appellate review. I note that the question of whether the issue was preserved for appellate review was not raised by appellee, but by this Court, sua sponte, and that the parties were not given the opportunity to address the question via supplemental briefs or oral argument.
Appellant's position, reflected in defense counsel's statements before the trial court, could not be clearer. He objected to the testimony of K.S. because he contended that his conduct with her was nothing like the crimes with which he was charged. It is also clear from the record that both the State and the trial judge understood appellant's objection to the testimony regarding his sexual relations with K.S., and that the trial judge specifically ruled against him on this issue. We cannot just ignore the reality of the situation below.
I would reverse the convictions and remand for a new trial. I would also certify this case to the supreme court as a matter of great public importance.
NOTES
[1] Williams v. State, 110 So.2d 654 (Fla.), cert. denied, Williams v. Florida, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959).
[2] Appellant's counsel argues that the trial testimony of K.S. differed from her proffered testimony in that it omitted identification of appellant as the man involved, did not reflect the facts asserted in the state's notice of intent to offer collateral evidence, and did not reflect any familial or custodial authority exercised by appellant.
[3] Mitchell involved conviction of the operator of an elderly care facility of aggravated abuse or exploitation of the aged and culpable negligence. This court found that treatment of other residents was admissible to counter inferences that the victim's injuries were isolated instances beyond the defendant's knowledge or control, and that such evidence did not become a feature of the trial.
[4] Beasley v. State, 518 So.2d 917 (Fla. 1988); Lazarowicz v. State, 561 So.2d 392 (Fla. 3d DCA 1990); Woodfin v. State, 553 So.2d 1355 (Fla. 4th DCA 1989), rev. den., 563 So.2d 635 (Fla. 1990); Padgett v. State, 551 So.2d 1259 (Fla. 5th DCA 1989); Anderson v. State, 549 So.2d 807 (Fla. 5th DCA 1989), rev. den., 560 So.2d 232 (Fla. 1990); Sampson v. State, 541 So.2d 733 (Fla. 1st DCA 1989); Smith v. State, 538 So.2d 66 (Fla. 1st DCA 1989); Snowden v. State, 537 So.2d 1383 (Fla. 3d DCA), rev. den., 547 So.2d 1210 (Fla. 1989).
[5] See Heuring v. State, 513 So.2d 122, 125 (Fla. 1987), in which the court approved the exclusion of evidence of molestations of five other children "since they were not sufficiently similar to the charged offenses." See also Paquette v. State, 528 So.2d 995 (Fla. 5th DCA 1988), involving lewd assaults on daughters, in which the court held that evidence that the defendant had previously exposed himself to other neighborhood children was inadmissible where there was no issue as to the identity of the perpetrator, nor any admission by the defendant that he had done the acts, but by mistake or innocently.