NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT


ANGELA M. GRAY, )
                         )
           Appellant, )
                         )
v. )       Case No. 2D15-616
                         )
MARK HALL HOMES, INC., and )
MARK HALL, individually, )
                         )
           Appellees. )
_____)

Opinion filed February 5, 2016.

Appeal from the Circuit Court for
Hillsborough County; Steven Scott
Stephens, Judge.

J. Frazier Carraway and Tracy M. Evans of
Saxon, Gilmore & Carraway, P.A., Tampa,
for Appellant.

Jonathan N. Zaifert and Manuel J. Alvarez
of Rywant, Alvarez, Jones, Russo &
Guyton, P.A., Tampa, for Appellees.


KHOUZAM, Judge.


         Angela Gray appeals the final judgments entered against Mark Hall

Homes, Inc. (MHH), and in favor of Mark Hall individually. Because the trial court erred

in limiting the jury's verdict, we reverse and remand for its reinstatement.  We affirm the remaining issues without comment.

In 2005, Angela Gray contracted with MHH to construct a single-family home on her property.  Gray agreed to pay $168,144 in a series of installment payments for the construction of the home.  Shortly after moving into the home, Gray discovered a number of defects which she brought to MHH's attention.  MHH attempted to remedy the defects, but Gray eventually filed suit for breach of contract.[1]

Gray presented the testimony of many witnesses regarding the condition of the home.  Chief among the defects was the lack of flashing, which is typically installed between walls and roofs to prevent moisture from penetrating the house.  Witnesses testified that lack of flashing caused damage throughout the house as moisture entered the home, causing wood rot to set in.

David Payton, a general contractor, testified that Gray paid him $16,000 to replace the balcony on the home.  He also testified that when he initially evaluated the home, he told Gray to "get a bulldozer" and start over.  He stated he would be hesitant to take on the job of repairing the entire house and that he would not even know where to start.

Wendell Brantley, a real estate agent, testified that he contracted with Gray to sell the house.  When he first saw the house, Brantley too told Gray to tear it down because it was worthless.  He further stated that a bank would not finance the home given its condition.  He listed the house for a year but did not receive a single

---

[1]Though Gray stated a number of other claims against both MHH and Hall, only her breach of contract claim against MHH is relevant to this appeal.

offer. He testified that the home was the worst house he had seen in his thirty-eight years in the real estate business and that the wood rot in the home was unbelievable.

Richard Kiddey, a structural engineer and home inspector, reviewed and approved the construction plans for the home. Kiddey also inspected the home prior to trial. He observed wood rot, water damage, mold, and doors that were so rotted that they could not open properly. Of approximately 3000 houses Kiddey had evaluated, he rated this home in the bottom ten. He testified that the home was not suitable rental property and uninsurable. He testified that the home was salvageable, but that such an endeavor would be expensive and that the cost would probably not justify the effort.

At the close of Gray's case, MHH moved for a directed verdict arguing that Gray had not properly proved damages. The trial court granted the motion in part, limiting damages to $16,000 because, in its view, the only concrete evidence of damages was Payton's testimony that he was paid $16,000 to replace the balcony. The jury returned a verdict for $168,000, but the trial court reduced the award to $16,000.

The trial court erred in limiting the damages in this case. In considering a motion for directed verdict, the trial court should evaluate the evidence "in the light most favorable to the plaintiff and every reasonable inference therefrom must be indulged in the plaintiff's favor." Scott v. TPI Rests., Inc., 798 So. 2d 907, 909 (Fla. 5th DCA 2001). Further, "[i]f there are conflicts in the evidence or different reasonable inferences may be drawn from it, then the issue is a factual one that should be submitted to the jury and not be decided by the trial court as a matter of law." Id. "In ruling on [a motion for directed verdict], a trial court may not pass on the credibility of witnesses or weigh competing evidence." Allison Transmission, Inc. v. J.R. Sailing, Inc., 926 So. 2d 404,

407 (Fla. 2d DCA 2006) (alteration in original) (quoting Stringer v. Katzell, 674 So. 2d 193, 195 (Fla. 4th DCA 1996)).

In Grossman Holdings Ltd. v. Hourihan, 414 So. 2d 1037, 1039 (Fla. 1982), the Florida Supreme Court adopted the Restatement (First) of Contracts' position on the measure of damages for a construction defect. The proper measure of damages for a defective construction contract is:

> all unavoidable harm that the builder had reason to foresee when the contract was made, less such part of the contract price as has not been paid and is not still payable, determined as follows:
>    (a) For defective or unfinished construction he can get judgment for either
>    (i) the reasonable cost of construction and completion in accordance with the contract, if this is possible and does not involve unreasonable economic waste; or
>    (ii) the difference between the value that the product contracted for would have had and the value of the performance that has been received by the plaintiff, if construction and completion in accordance with the contract would involve unreasonable economic waste.

Id. at 1039 (quoting Restatement (First) of Contracts § 346(1)(a) (Am. Law. Inst. 1932)) (emphasis added). The Grossman court went on to quote comment (b) to explain the rule:

> The purpose of money damages is to put the injured party in as good a position as that in which full performance would have put him; but this does not mean that he is to be put in the same specific physical position. Satisfaction for his harm is made either by giving him a sum of money sufficient to produce the physical product contracted for or by giving him the exchange value that that product would have had if it had been constructed. In very many cases it makes little difference whether the measure of recovery is based upon the value of the promised product as a whole or upon the cost of procuring and constructing it piecemeal. There are numerous cases, however, in which the value of the finished product is much less than the cost of producing it after the breach has occurred. Sometimes defects in a complete

- 4 -

> structure cannot be physically remedied without tearing down and rebuilding, at a cost that would be imprudent and unreasonable. The law does not require damages to be measured by a method requiring such economic waste. If no such waste is involved, the cost of remedying the defect is the amount awarded as compensation for failure to render the promised performance.

Id. (quoting Restatement (First) of Contracts § 346(1)(a) cmt. b (Am. Law. Inst. 1932)) (emphasis added).

Here, multiple witnesses testified that the house was worthless, that salvaging the house may not be economically feasible, and that Gray might be better off demolishing it and rebuilding. Based on this evidence, the jury could have reasonably concluded that the house, as constructed, was valueless. Applying the formula announced in Grossman, the jury's verdict is a sustainable measure of damages.[2] Therefore, the trial court erred when it limited damages in this case to $16,000.[3]

MHH and Hall argue on appeal that the testimony supporting the conclusion that the home was without value was gratuitous lay opinion. However, they lodged no objection to the admission of this testimony at trial and cannot contest it for the first time on appeal. See Maddry v. State, 585 So. 2d 359, 360 (Fla. 1st DCA 1991) (noting that an appellate court "cannot consider those objections to admissibility of evidence which are raised for the first time on appeal.").

---

[2]We recognize that the exact contract price was $168,144, but we find the difference between the actual contract price and the jury's award of $168,000 negligible. It has no bearing on our analysis.

[3]We also note that in considering the value of the home, the trial court reasoned that "[t]he notion that the property was completely valueless was contradicted by the plaintiff's actions." In doing so, the trial court impermissibly reweighed the evidence. See Allison Transmission, 926 So. 2d at 407.

Accordingly, we reverse the order limiting damages to $16,000 and remand with instructions to reinstate the jury's verdict.

Affirmed in part, reversed in part, and remanded.

KELLY and BADALAMENTI, JJ., Concur.