553 So.2d 1355 (1989)
Robert Anderson WOODFIN, Appellant,
v.
STATE of Florida, Appellee.
No. 88-0605.
District Court of Appeal of Florida, Fourth District.
December 20, 1989.
Richard L. Jorandby, Public Defender, and Susan D. Cline, Asst. Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and William I. Munsey, Jr., Asst. Atty. Gen., Tampa, for appellee.

ON REHEARING
LETTS, Judge.
We grant the motion for rehearing and substitute the following opinion:
*1356 The defendant was found guilty of two counts of sexual battery on a child under twelve, one count of attempted sexual battery on a child under twelve, and one count of indecent assault upon a child. The defendant claims that the court erred in permitting the testimony of witnesses quoting out-of-court statements made by each of the two victims, one ten years old and the other five years old. The defendant further argues that evidence of collateral crimes was improperly received and that the trial court abused its discretion when it allowed the five year old victim to "testify," unsworn, without making any determination as to her competency and understanding of the truth. We affirm.
Section 90.803(23), Florida Statutes (1987) establishes an exception to the hearsay rule and allows witnesses to testify to reliable out-of-court statements made by children no more than eleven years old. While there is more than one argument on appeal concerning lack of compliance with the requirements of this particular statute, we choose to address the question of whether the court made "specific findings of fact" as required by subsection (c) of the statutory language. We cannot but admit that the findings of fact as to some of the six witnesses were not very specific; however, they were sufficient for us to conclude that they substantially complied with the statute. See Stone v. State, 547 So.2d 657, 659 (Fla. 2d DCA, 1989). There were no objections to the testimony of the two physicians, except as to some specific questions which we find to be cumulative and not reversible. Likewise, whatever imperfections occurred in connection with the remaining witnesses, their testimony was merely cumulative.
In addition to the above, we believe that other perfectly admissible testimony overwhelmingly established guilt. First of all, not only did the two child victims testify, (the elder's version of events was particularly explicit), but, in addition, the defendant's own natural daughter,[1] aged twenty, gave evidence that during her very early childhood, she too had been a victim. As to her testimony, we quote from the appellant's brief:
Appellant would come home when she was alone and show her things he wanted her to do, there was never any real conversation; Appellant asked her to rub his penis with her hand in an up and down motion that he showed her; he touched her in her vaginal area; he asked her to place his penis in her mouth and suck on it; at some point his fingers had penetrated her vagina; he tried but failed to enter her vagina with his penis from behind while she bent over a footstool; although she could not remember exactly when these activities began, she believed they began in the first grade and continued to the fifth grade.
To be sure, the defendant insists that this collateral crime evidence was improper, irrelevant and inadmissible. However, we do not agree; and in a civil case, we recently held to the contrary. Carr v. Phillips, 540 So.2d 168 (Fla. 4th DCA 1989). Moreover, in criminal cases, prior similar acts by the defendant are admissible pursuant to section 90.404(2)(a). Such evidence is admissible to prove a material fact in issue, such as motive, opportunity, intent, preparation, plan, knowledge or identity. This is exactly what the prosecutor argued, sub judice, during the pretrial Williams Rule hearing.[2] Quite apart from statutory authority, such evidence has been allowed in other instances of sexual offenses against children, upon the theory that it is relevant to corroborate the testimony of the victim. Heuring v. State, 513 So.2d 122 (Fla. 1987); Sampson v. State, 541 So.2d 733 (Fla. 1st DCA 1989). Notwithstanding, the defendant argues strenuously that the various acts here were dissimilar rather than similar to the point that the testimony admitted did nothing more than improperly establish *1357 the defendant's bad character or propensity to commit criminal acts. We disagree. As to the argument that the acts were too remote time-wise, we quote from Heuring:
[T]he opportunity to sexually batter young children in the familial setting often occurs only generationally ... when the opportunity [arises].
513 So.2d at 124. Accordingly, the acts were, unfortunately, only too similar and we believe that Williams Rule testimony was admissible under the facts of this case. It was relevant and did not become a feature of the trial. The collateral crime testimony took up only five out of approximately three hundred pages of the trial record.
The medical testimony here was to the effect that both victims had had their hymens badly torn and one of them had contracted rectal venereal disease. Absent some congenital presence, it would be implausible to suggest that a five year old could contract venereal disease by any method other than sexual contact. Moreover, another state witness, whose testimony was never objected to, testified that the defendant admitted he might be guilty of lewd and lascivious behavior toward the victims.
Therefore, we hold, from all of the foregoing, that while section 90.803(23) may not have been complied with in every technical detail, there was sufficient compliance. Again, the evidence of guilt was overwhelming and we conclude beyond a reasonable doubt that the error did not affect the verdict, and that such error as did occur was harmless and therefore not reversible. §§ 59.041 & 924.33, Fla. Stat. (1987); State v. DiGiulio, 491 So.2d 1129 (Fla. 1986). As our supreme court remarked in Hoffman v. State, 397 So.2d 288, 290 (Fla. 1981): "A defendant is entitled to a fair trial, not a perfect one." (Lackos v. State, 339 So.2d 217, 219 (Fla. 1976), quoting Grimes, J.) While the record sub judice is not perfect, it is not unfair.
Turning now to the question of the five year old victim testifying without being sworn, we begin by setting forth the applicable 1987 statute:
90.605 OATH OR AFFIRMATION OF WITNESS.
(2) In the court's discretion, a child may testify without taking the oath if the court determines the child understands the duty to tell the truth or the duty not to lie.
The problem before us is that the trial judge made no inquiry of record which would establish that the child understood her duty to tell the truth. We note, of course, that the statutory provision does not require findings of fact, but it does require a determination. One might logically assume that the trial judge did so determine or he would not have let her testify. Yet, that by itself is only speculation and we find the trial judge's course of action deficient in this regard, especially since he did make the appropriate inquiry of the other child victim. However, no objection was made and we do not believe the deficiency rose to the level of fundamental error in light of the particular facts of this case.
For instance, examination of the five year old child's testimony demonstrates that she had sufficient mental capacity and understood what was going on at trial. We reproduce her testimony as follows:
MR. LAZARUS: State calls Diana (last name omitted). Diana, what does this mean (indicating)?
THE WITNESS: You can't hear.
MR. LAZARUS: Say hello to the judge, Diana.
THE COURT: Hi, Diana. Members of the jury, because of the youthful age of this witness, she will not be sworn, but you will consider her testimony like you would consider the testimony of any other witness, you will give it whatever weight and credibility you think it deserves.
MR. LAZARUS: Speak up nice and loud so we can all hear you, Diana.
DIRECT EXAMINATION
Q. (By Mr. Lazarus) State your name.

*1358 A. Diana.
Q. Diana what?
A. (Gives name).
Q. Diana, how old are you?
A. Five.
Q. Do you go to school?
A. Yes.
Q. Where?
A. (Gives school).
Q. What grade are you in, Diana?
A. Kindergarten.
Q. What do you like in school?
A. Coloring.
Q. What do you color?
A. Photographs.
Q. What kind of photographs?
A. I don't know.
Q. Are they pretty photographs?
A. Yes.
Q. Is Bob a friend of your mom's?
A. Boyfriend.
Q. Is this (indicating) Bob?
A. Yes.
MR. LAZARUS: For the record, judge, this witness, Diana (last name omitted) has identified the defendant Robert Woodfin.
THE COURT: Yes, sir.
Q. (By Mr. Lazarus) You used to live with your mom; didn't you, Diana?
A. Yes.
Q. With your mother and your sister, (name omitted).
A. Yes.
Q. Did you live [in] an apartment?
A. No.
Q. In a house?
A. Yes.
Q. Did Bob live next door or near you?
A. Next door.
Q. Do you like Bob?
A. No.
Q. Why?
A. I don't like what he did.
Q. What did he do, honey? Did he touch you somewhere?
A. No. He put me on his lap.
Q. Did he ever touch you anywhere?
A. Yes.
Q. Where? Where are you pointing to? Stand up, if you would, and show me where you were pointing to.
A. (Indicating.)
MR. LAZARUS: For the record, Your Honor, between her legs. And, I have no further questions of this witness.
CROSS EXAMINATION
Q. (By Mr. Hitchcock) Diana, I would like to talk to you for just a minute. This (indicating) means I can't hear you; okay?
A. Okay.
Q. My name is Bo Hitchcock and I'm going to ask you a couple of questions; okay?
A. Okay.
Q. You don't have any problem with me asking you questions; do you?
A. No.
Q. Do you like living where you are now?
A. Yes.
Q. Do you remember where you lived before you lived where you are at now?
A. Yes.
Q. Where did you live then?
A. Very far.
Q. Who did you live with?
A. Mommy.
Q. In between there, didn't you live with your daddy for a while? Daddy and (name omitted).
A. Yes.
Q. You don't live there anymore with daddy and (name omitted).
A. No.
Q. Do you know why you don't live with daddy and Rhonde anymore?
A. No.
Q. You love your daddy; don't you?
A. Yes.

*1359 Q. And you love your mommy?
A. Yes.
Q. You would rather live with mommy and daddy; wouldn't you?
A. Yes.
Q. Bob is not your daddy; is he?
A. No.
Q. You knew Bob was your mommy's boyfriend; right?
A. Yes.
Q. And you were upset that mommy and Bob were boyfriend and girlfriend? You didn't like that; did you?
A. No.
Q. You want mommy to get back with your daddy; don't you?
A. Yes.
MR. HITCHCOCK: Thank you, Diana. I have no further questions, judge.
MR. LAZARUS: No redirect, judge.
THE COURT: Thank you, Diana. You can go back outside.
As a consequence, we believe that the record supports a determination by the trial judge that the five year old child was competent and understood what was going on. Moreover, her testimony was cumulative and not nearly so damaging or explicit as that of other witnesses including, but not limited to, her ten year old sister and the father's twenty year old daughter. Their testimony corroborated that of the younger victim, so that the accumulated testimony of others demonstrates the five year old's credibility despite the trial judge's failure to expressly so determine.
The defendant's final contention is that the trial court should not have assessed points for victim injury on the attempted sexual battery count (the only charge for which a scoresheet was employed). We agree that victim injury is not an element of the crime of attempted sexual battery. Additionally, in correcting the sentence, the written order should conform to the oral pronouncement. Kelly v. State, 414 So.2d 1117 (Fla. 4th DCA 1982). The written sentence did not reflect the oral pronouncement made by the trial court. We, therefore, reverse and remand for resentencing on this. See Fennell v. State, 544 So.2d 1017 (Fla. 1989).
We stress that this opinion is limited to all of its facts. In Florida, hearsay is not permitted except for recognized exceptions. One of the more poignant of these exceptions is section 90.803(23) which permits witnesses to repeat out-of-court statements by child sexual abuse victims. In the case at bar, the victims' testimonies at trial largely dovetailed the out-of-court statements; however, there can be no question that the trial judge did not strictly follow the dictates of the statute in all instances. Trial judges and prosecutors should religiously adhere to the statutory scheme. Under other circumstances, we might well have reversed this cause. However, as stated above, any error was harmless.
We find no error among the other points on appeal.
AFFIRMED.
ANSTEAD and STONE, JJ., concur.
NOTES
[1] The two victims in the case at bar were the natural daughters of the defendant's paramour.
[2] Williams v. State, 110 So.2d 654 (Fla. 1959).