605 So.2d 915 (1992)
Wayne ADKINS, Appellant,
v.
STATE of Florida, Appellee.
No. 91-1389.
District Court of Appeal of Florida, First District.
September 11, 1992.
Rehearing Denied October 1, 1992.
*916 Louis O. Frost, Jr., Public Defender, James T. Miller, Asst. Public Defender, Jacksonville, for appellant.
Robert A. Butterworth, Atty. Gen., Charlie McCoy, Asst. Atty. Gen., Tallahassee, for appellee.
MINER, Judge.
Raising two points on appeal, appellant, Wayne Adkins, seeks review of his conviction on four counts of sexual battery upon a child under twelve years of age. We affirm.
Citing to Kopko v. State, 577 So.2d 956 (Fla. 5th DCA 1991), quashed, 596 So.2d 669 (Fla. 1992), appellant first argues that the trial court erred in permitting more than one witness to testify as to the child victim's prior consistent statements regarding sexual abuse. We find no merit in this argument and affirm on this point without further comment. Pardo v. State, 596 So.2d 665 (Fla. 1992). Secondly, appellant maintains that the trial court reversibly erred in admitting evidence of other crimes that were not sufficiently similar to the charged offenses. Finding to the contrary, we affirm on this point also for the reasons discussed herein.
Appellant was charged by information with four counts of sexual assault committed on K.T., his stepson, when the boy was between 7 and 9 years of age.[1] Each count of the information alleged that appellant forced K.T. to take appellant's penis into his mouth.
Pre-trial, the state served notice of intent to rely in part on evidence of other crimes, wrongs or acts pursuant to section 90.404(2), Florida Statutes. Specifically, the notice provided that the state would introduce evidence that appellant had, during a portion of the same time frame when the charged offenses were allegedly committed, fondled the vagina of R.T., K.T.'s younger sister, and attempted to force her to place her mouth on his penis. Additionally, the state sought to introduce evidence that about the same time as appellant allegedly committed the offenses against R.T., he had fondled the breasts and vagina of C.C., who is the maternal aunt of K.T. and R.T., but is only a year or two older than the siblings.
After a hearing on the collateral crime evidence and over appellant's objection that the offenses testified to by R.T. and C.C. were irrelevant because they were not sufficiently similar to the charged offenses to be admissible as similar fact evidence, the court ruled that such testimony would be admitted and granted appellant a standing objection to that evidence. In March 1991, the case proceeded to trial.
At trial, K.T. testified that at the time the charged offenses were committed on him, he lived with his mother, S.A., his younger sister, R.T., and appellant, his stepfather. His mother worked at night and he and his sister were left in the charge of appellant, who by all accounts was an alcohol abuser. The incidents of which K.T. complained occurred in the living room when his sister was in bed or taking a bath, and primarily when appellant had been drinking. According to the boy, on "a lot of these nights" appellant "made me suck his penis." Appellant would warn K.T. that if he told of those acts, appellant would kill him, his sister *917 and his mother, and burn the house down. Although the child's testimony was lacking in various details and conflicted to some degree with what he had previously told Child Protection Team investigators, his testimony that he had been sexually abused remained substantially unshaken under adroit and searching cross-examination.
R.T., who was 10 years old at the time of the trial, testified that appellant touched her on "[my] boobies, where you pee at and your bottom." She was unsure how many times this happened but did say that it happened "a lot of times", usually when appellant had been drinking. These incidents took place when she was alone with appellant and usually occurred in her bedroom or in her mother's room. She recounted that appellant warned her not to tell what had happened or he would burn the house down.[2]
C.C., who was 13 years old at the time of trial, testified to an incident which took place "a year or so" prior to the trial when she was spending the night at appellant's home. She and R.T. were sleeping in the same bed when appellant entered the room wearing his robe and pajamas. C.C. was awakened when appellant moved her night clothes aside and began to fondle her in the vaginal area. He told C.C. that he would hit her if she made any outcry.
After the state rested its case, appellant called a number of witnesses who testified that he had a good relationship with his stepchildren. He took the stand in his own behalf and testified that his drinking had caused problems during his marriage to S.A. but that he had a "wonderful" relationship with the children. He denied all allegations of sexual abuse and, as his counsel had suggested during opening statement to the jury, intimated that his ex-wife had persuaded the children to lie "because she didn't want me around. She's afraid of me." Nevertheless, the jury found appellant guilty as charged and he was sentenced to concurrent life terms on each count.
Citing to Ables v. State, 506 So.2d 1150 (Fla. 1st DCA), rev. denied, 513 So.2d 1063 (Fla. 1987), in which this court reversed a conviction for sexual battery upon a child because the panel concluded that the "similar fact evidence" admitted at trial was not sufficiently similar to the charged offense to be admissible,[3] appellant reminds us that the similar fact evidence admitted below involved children of the opposite sex. He argues that the acts themselves were different and took place at different times and places. Thus, he concludes that the evidence was improperly admitted under section 90.404(2), Florida Statutes.
The state counters that the so-called Williams Rule evidence[4] introduced in the case at bar was sufficiently similar in that it involved children roughly the same age, who were related by marriage to the appellant; all the events described took place during the same time frame and at night at home when appellant was in custodial authority over the children; most significantly, appellant threatened bodily harm to all the children if they told. The state emphasizes that the evidence was offered not to *918 prove identity, but rather to corroborate the victim's testimony. See, Heuring v. State, 513 So.2d 122 (Fla. 1987). The state argues that, under such circumstances, the strict standard of similarity that applies when identity is at issue has been "relaxed." Calloway v. State, 520 So.2d 665, 667 (Fla. 1st DCA 1988), rev. den., 529 So.2d 693 (Fla. 1988).
Significantly, in the instant case, appellant does not contend that the evidence offered by R.T. and C.C. became the feature of the trial,[5] nor does he make the argument that the probative value of that evidence was substantially outweighed by undue prejudice. Relying on Ables, supra, he maintains only that the incidents described by the two little girls were not sufficiently similar to those described by K.T. to be admissible under section 90.404(2), Florida Statutes. For the following reasons, we disagree.
First, we point out that the Ables court did not have the benefit of the Florida supreme court's opinion in Heuring. In Heuring, the court noted that cases involving sexual offenses committed against children in a familial context present peculiar problems; the court indicated that the better approach is to treat similar fact evidence in those circumstances under the general relevancy rule as corroboration of the victim's testimony. Secondly, post-Heuring, we have held that the rigidity with which the similarity requirement is applied in cases wherein evidence of collateral crimes is introduced to prove a fact, such as the identity of the perpetrator, is not necessary in cases like the one at bar where the evidence is relevant to corroborate the victim's testimony. Calloway, supra. Following Heuring, each of the other district courts has reached the same conclusion. See Gould v. State, 558 So.2d 481 (Fla. 2d DCA 1990), quashed in part on other grounds, 577 So.2d 1302 (Fla. 1991); Montgomery v. State, 564 So.2d 604 (Fla. 3d DCA 1990); Woodfin v. State, 553 So.2d 1355 (Fla. 4th DCA 1989), rev. denied, 563 So.2d 635 (Fla. 1990); Anderson v. State, 549 So.2d 807 (Fla. 5th DCA 1989), rev. denied, 560 So.2d 232 (Fla. 1990). See also: Smith v. State, 538 So.2d 66 (Fla. 1st DCA 1989); Grant v. State, 577 So.2d 625 (Fla. 1st DCA 1991); Lazarowicz v. State, 561 So.2d 392 (Fla. 3d DCA 1990); Wilkerson v. State, 583 So.2d 428 (Fla. 1st DCA 1991); Padgett v. State, 551 So.2d 1259 (Fla. 5th DCA 1989). Clearly, then, in such cases as the one at hand, where identity is not an issue, the victim's credibility is of paramount importance, especially when that credibility has been specifically challenged, as here.
We note that in Bryan v. State, 533 So.2d 744 (Fla. 1988), cert. den., 490 U.S. 1028, 109 S.Ct. 1765, 104 L.Ed.2d 200 (1989), the supreme court reiterated that relevancy is the polestar in determining the admissibility of evidence of other crimes. In rejecting Bryan's contention in a murder prosecution that the trial court erroneously admitted evidence that, three months prior to the murder, Bryan had committed an armed bank robbery in another state and had stolen a boat shortly before the murder, the court reasoned:
Evidence of "other crimes" is not limited to the other crimes with similar facts. So-called similar fact crimes are merely a special application of the general rule that all relevant evidence is admissible unless specifically excluded by a rule of evidence. The requirement that similar fact crimes contain similar facts to the charged crime is based on the requirement to show relevancy. This does not bar the introduction of evidence of other crimes which are factually dissimilar to the charged crime if the evidence of other crimes is relevant.
* * * * * *
The only limitations to the rule of relevancy are that the state should not be permitted to make the evidence of other crimes the feature of the trial or to introduce the evidence solely for the purpose of showing bad character or propensity *919 in which event it would not be relevant, and such evidence, even if relevant, should not be admitted if its probative value is substantially outweighed by undue prejudice. 533 So.2d at p. 746 (Emphasis in original).
In light of the above considerations, we find that the testimony of R.T. and C.C. was admissible under both section 90.404(2), Florida Statutes and the general rule of relevance.
Sex offenses committed in a familial setting against children can be accomplished in a variety of ways. Such offenses are often characterized by a progression of events beginning perhaps with inappropriate language or suggestion, followed by offensive touching, advancing to digital penetration and culminating in sexual relations. Such a cycle is illustrated in Woodfin v. State, supra., wherein the court affirmed defendant's conviction on two counts of sexual battery, and one count of attempted sexual battery on a child under 12 and one count of indecent assault on a child. The victims were the daughters of defendant's paramour. Defendant's natural daughter, 20 years old at trial, was permitted to testify under the Williams Rule to events which occurred in her early childhood. As recounted in appellant's brief:
Appellant would come home when she was alone and show her things he wanted her to do, there was never any real conversation; appellant asked her to rub his penis with her hand in and up and down motion that he showed her; he touched her in her vaginal area; he asked her to place his penis in her mouth and suck on it; at some point his fingers had penetrated her vagina; he tried but failed to enter her vagina with his penis from behind while she bent over a footstool.
553 So.2d at 1356. See also State v. Paille, 601 So.2d 1321 (Fla. 2nd DCA 1992). (In a prosecution for oral and penile sexual battery of a child in a familial context, it was not error to admit evidence of two prior incidents involving kissing and one prior incident involving digital penetration.)
If one were to imagine a scale of sex offenses committed against children in a familial context, on which scale the offenses were delineated 1 to 10 in order of seriousness, appellant here would argue that since he was charged with a category 10 offense against one child, evidence that he committed, say, a category 1, 3 or 7 offense against another child in the family would be inadmissible under section 90.404(2) because of factual dissimilarity between the offenses.
To adopt appellant's reasoning that sexual encounters between a family member and his child victims must be virtually factually identical in order to be admissible under section 90.404(2) would require us to ignore the plain meaning of the word "similar". "Similar" means: "nearly corresponding, resembling in many respects, somewhat like, having a general likeness." Webster's New International Dictionary, 2nd Edition. "Similar" does not mean "exactly the same." See Anderson v. State, supra. As used in section 90.404(2), it merely requires that the offenses share some like characteristics. It seems to us unreasonable to argue that the acts appellant allegedly performed on the three different children involved here were not "similar" because the various episodes necessarily factually differed in certain details due in part to the different moments when they occurred, the different gender of the victims,[6] the different opportunities each occasion presented to the appellant and the different urges to which he responded each time.
Thus, in the instant case, which involved a familial setting, admissibility of the testimony of R.T. and C.C. does not hinge on a determination that the particular details of each incident are virtually identical. Accordingly, we find that the testimony of each of the female children was relevant to corroborate the testimony of the male victim *920 of the charged offenses, whose credibility was necessarily a paramount issue, and that their testimony was sufficiently "similar" to be admissible under section 90.404(2). (Compare Calloway, supra.)
AFFIRMED.
BOOTH and SHIVERS, JJ., concur.
NOTES
[1] K.T. was 11 years old at the time of trial.
[2] On cross-examination, she denied that appellant tried to make her take his penis into her mouth even though in an earlier deposition, taken at the instance of appellant, she told defense counsel that he had done so. R.T.'s deposition testimony on this point was used before the jury by defense counsel to cast doubt on her memory and credibility. Whether or not appellant tried to force her to take his penis into her mouth amounted to a conflict in the evidence to be resolved by the jury as is any other conflicting testimony.
[3] In Ables, the defendant was charged with fondling and inserting his fingers into the vagina of his nine year-old niece, and engaging in oral sex with her. Afterwards, he accused the child of having sex with his step-son and threatened to tell others about that relationship if she told anyone about his actions. "Similar fact" evidence was introduced from his step-daughter, who testified that, twelve years earlier, he drove her to an isolated area and pulled down her panties to see if she was a virgin. The step-daughter also related an incident in which the defendant awakened her and asked her to remove her clothes. When she refused and threatened to tell her mother, he said he would tell her mother that she had put her hand on his private parts.
[4] Williams v. State, 110 So.2d 654 (Fla.), cert. den., 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959).
[5] The direct testimony of R.T. and C.C., combined, consumed but 18 pages of the 395 page trial transcript.
[6] In Grant v. State, supra, we decided the different gender issue adversely to the position taken by appellant. See also Padgett v. State, supra.