625 So.2d 31 (1993)
Ramon SAFFOR, Appellant,
v.
STATE of Florida, Appellee.
No. 91-2667.
District Court of Appeal of Florida, First District.
September 15, 1993.
*32 Nancy A. Daniels, Public Defender, Carol Ann Turner, Asst. Public Defender, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen., Wendy S. Morris, Asst. Atty. Gen., Tallahassee, for appellee.
EN BANC
WOLF, Judge.
Appellant challenges his conviction for sexual battery on a child under 12 years of age. He asserts that the trial court erred in admitting evidence of a collateral crime because the prior criminal act was not sufficiently similar to the charged offense so as to constitute similar-fact evidence under section 90.404(2), Florida Statutes (1989). We determine that the evidence was sufficiently similar to provide corroboration for the victim's testimony in a case involving a sexual battery within the familial context, and we affirm.
The testimony at trial revealed that the child victim was living with his mother and the appellant at the time of the offense. The victim's relationship with appellant was tantamount to a stepson. He was the son of appellant's girlfriend, a woman with whom appellant had fathered two children. According to the ten-year-old victim, he was awakened from his sleep by the appellant, who pulled down the child's pants and sodomized him.
The victim of the collateral crime which occurred four years earlier was the niece of appellant and was 12 years old at the time of the incident.[1] She testified that she was sleeping at her aunt's house when the appellant, her uncle, put his hand under her pajamas towards her vagina, but he withdrew his *33 hand when she asked him to leave. The appellant argued at trial that the alleged dissimilarities between offenses, such as the difference in the sex of the children, the disparity of the sexual acts involved, and the fact that appellant failed to complete his attack against one of the victims rendered the collateral crime evidence inadmissible. These arguments were considered and rejected by the trial judge and have been rejected by this court in the past. The lower court considered the fact that appellant was interrupted in one instance by the protests of the victim,[2] and the court reasoned that because appellant was interrupted, it was impossible to say "what might have occurred had he continued on his journey wherever he was going."[3] The trial judge apparently determined that the minor differences in the sex acts were less important than the appellant's method of committing the crime, by attacking children of approximately the same age in their bedrooms when the opportunity presented itself.[4]
In determining the admissibility of collateral crime evidence, the trial court must make two determinations: (1) Whether the evidence is relevant or material to some aspect of the offense being tried, and (2) whether the probative value is substantially outweighed by any prejudice. See §§ 90.402, 90.403, and 90.404(2), Fla. Stat.; Bennett v. State, 593 So.2d 1069 (Fla. 1st DCA 1992). The standard of appellate review is whether the trial court abused its discretion in making these evidentiary determinations. Bennett, supra; Sims v. Brown, 574 So.2d 131 (Fla. 1991). In Sims, the supreme court approved the fourth district's finding:
The determination of relevancy is within the discretion of the trial court. Where a trial court has weighed probative value against prejudicial impact before reaching its decision to admit or exclude evidence, an appellate court will not overturn that decision absent a clear abuse of discretion.
Sims, supra at 133, quoting Trees v. K-Mart Corp., 467 So.2d 401, 403 (Fla. 4th DCA), rev. denied, 479 So.2d 119 (Fla. 1985). The trial court in the instant case did not abuse its discretion in admitting evidence of a collateral crime. Both the charged offense and the collateral crime involved sexual attacks on children approximately the same age who had a familial relationship with the perpetrator, and both attacks occurred while the children were asleep in bed.
In Heuring v. State, 513 So.2d 122 (Fla. 1987), the supreme court recognized that the general rule concerning admission of collateral offenses is that to be admissible they "must meet strict standards of relevance," they must contain "unique characteristics," and they must be "strikingly similar" to the charged offense. The court, however, went on to recognize that situations involving sexual battery within the familial context presented special problems which distinguish them from other cases involving the introduction of collateral crimes:
The victim knows the perpetrator, e.g., parent and identity is not an issue. The victim is typically the sole eyewitness and corroborative evidence is scant. Credibility becomes the focal issue.
Id. at 124. The court stated that collateral crime evidence was relevant and admissible "to corroborate the victim's testimony and [this approach] recognizes that in such cases, the evidence's probative value outweighs its prejudicial effect." Id. at 125.
In Beasley v. State, 518 So.2d 917 (Fla. 1988), the supreme court approved its holding in Heuring. While not specifically stated *34 in either opinion, it appears the supreme court determined that the collateral crime evidence was corroborative because it demonstrated what some commentators have described as "depraved sexual propensity." The evidence is corroborative because the fact that the perpetrator has acted in a similarly depraved fashion in the past is predictive of his actions at other times. Myers, in Evidence in Child Abuse and Negligence Cases, discusses the law concerning the necessary similarity between the charged and collateral crime evidence in the context of depraved sexual propensity as follows:
The Lopez court correctly concluded that precise similarity between charged and uncharged acts is unnecessary. The evidentiary value of depraved sexual propensity evidence lies in its predictive value. Someone with a history of deviant sexual behavior is more likely than someone without such a history to engage in deviant sexual conduct. The predictive value of the evidence lies not so much in the similarity between uncharged and charged acts as in the deviant nature of the acts. The psychological literature indicates that many paraphiliacs engage in a number of different types of deviant sexual behavior. Thus, the requirement of similarity is considerably less important than the requirement that the charged and uncharged acts constitute deviant sexual behavior.
2 J. Myers, Evidence in Child Abuse and Negligence Cases § 6.21, at 63, citing State v. Lopez, 170 Ariz. 112, 822 P.2d 465 (Ct.App. 1991) (footnotes omitted).
In Calloway v. State, 520 So.2d 665 (Fla. 1st DCA 1988), rev. denied, 529 So.2d 693, (Fla. 1988), this court specifically stated
[t]he rigidity with which the similarity requirement is applied in cases wherein the collateral crimes are introduced to prove a fact such as identity of the perpetrator is not necessary in other situations as in the instant case where the evidence is relevant to corroborate the victim's testimony.
Id. at 668. The district courts of this state, including this court, have recognized the wisdom of not requiring a unique characteristic tantamount to a signature in cases where identity is not at issue. Florida district courts have adopted the rationale of Calloway in familial sexual battery cases.[5]See, e.g., Adkins v. State, 605 So.2d 915 (Fla. 1st DCA 1992); Gould v. State, 558 So.2d 481 (Fla. 2d DCA 1990); Bierer v. State, 582 So.2d 1230 (Fla. 3d DCA), rev. denied, 591 So.2d 180 (Fla. 1991).
In recognition of the less rigid standard of similarity, this court has ruled that evidence of dissimilarities between crimes of the type relied on should not result in collateral crime evidence being excluded. In Adkins, supra, and in Grant v. State, 577 So.2d 625 (Fla. 1st DCA 1991), the court found that a difference in sex of the victims would not preclude admission of collateral crimes evidence.[6] In Wilkerson v. State, 583 So.2d 428 (Fla. 1st DCA 1991), the fact that the victim's sibling awoke to find the defendant unfastening her pajamas, which apparently prevented the defendant from proceeding further, did not render such evidence inadmissible. In Calloway v. State, 520 So.2d 665 (Fla. 1st DCA), rev. denied, 529 So.2d 693 (Fla. 1988), we held that evidence of "tickling ... and touching ... breasts" of a collateral crime witness is admissible in a prosecution of the defendant for sexual battery of his stepdaughter. See also Woodfin v. State, 553 So.2d 1355 (Fla. 4th DCA 1989), rev. denied, 563 So.2d 635 (Fla. 1990).
The similarity of the method of attack in this case outweighs any dissimilarity. In determining whether the trial court abused its discretion, we must apply the reasonableness test set forth in Canakaris v. Canakaris, *35 382 So.2d 1197 (Fla. 1980). Files v. State, 613 So.2d 1301 (Fla. 1992). "If reasonable men could differ as to the propriety of the action by the trial court, then the action is not unreasonable and there can be no finding of an abuse of discretion." Canakaris, supra at 1203.
It is argued that the Heuring opinion and other cases involving admissibility of collateral crimes evidence are inapplicable in this case because there is no showing that the crime victim in the instant case was subject to the familial or custodial authority of the appellant.[7] This argument fails for several reasons: (1) The test for admissibility of collateral crime evidence under Heuring, supra, is that the event occurred in a familial setting or context; the requirement of demonstrating familial or custodial authority is only applicable where "authority" is a statutory element of the crime pursuant to section 794.041(2); and (2) there was sufficient evidence of a familial relationship to support the trial judge's admission of the collateral crime evidence.
In Heuring, supra, the court focused on the specific aspects of a sexual battery in a familial context in determining that a less rigid standard of similarity should be utilized in determining the admissibility of collateral crime evidence. The court stated that in cases where identification is not at issue and credibility is the focal issue, the less rigid standard should apply. These circumstances are present in all cases where there is a familial relationship between the victim and the perpetrator, and not just those cases where there is evidence of an authoritative relationship. The focus should be the relationship of the parties and the nature of the crime rather than the extent of the authority exercised by the perpetrator over the victim. Thus, in cases such as Heuring, supra; Calloway, supra; and Grant v. State, 577 So.2d 625 (Fla. 1st DCA 1991), collateral crime evidence was admitted without any discussion of the authority asserted by the alleged perpetrator.
In fact, the case of Calloway v. State, 520 So.2d 665 (Fla. 1st DCA 1988), rev. denied, 529 So.2d 693 (Fla. 1988), is remarkably similar to the instant case. In Calloway, the Heuring analysis was applied in a situation where the victim was a stepchild and the collateral crime evidence involved two victims, a friend of the stepchild who was not related to the perpetrator, and another victim who was the stepchild's aunt. There was no evidence of the exercise of authority by the perpetrator; the only evidence concerning the perpetrator's relationship to the children was that the perpetrator had access to the children's sleeping quarters on the day the alleged crimes occurred. In the instant case, the collateral crime occurred at the home of the victim's aunt, the perpetrator was the brother of the aunt (uncle of the victim), and the perpetrator had access to the child's bedroom while she slept. Thus, this case falls within the definition of familial context addressed in Heuring and discussed in Calloway.
Even if the appropriate test for application of Heuring required demonstration of an authoritative relationship, the facts in the instant case would meet this criteria. The courts have adopted a flexible standard in defining the necessary authoritative relationship. As pointed out by the third district in Bierer v. State, 582 So.2d 1230 (Fla. 3d DCA 1991), this district in Stricklen v. State, 504 So.2d 1248, 1250 (Fla. 1st DCA 1986), set forth a broad definition of the term "familial" in order to effectuate the statutory purpose of protecting minor children "from predatory influences of older persons who establish close family ties with them." Additional cases have also eased the burden of proof under such circumstances. In Coleman v. State, 485 So.2d 1342 (Fla. 1st DCA 1986), this court recognized that a blood relationship was not necessary. In Stricklen v. State, 504 So.2d 1248 (Fla. 1st DCA 1986), the court held that where a close relationship had developed between the victim and perpetrator, it was unnecessary that the perpetrator either be related or reside in the same household for custodial authority to exist. The fifth district held in a similar manner in the case of Collins v. State, 496 So.2d 997 *36 (Fla. 5th DCA 1986), rev. denied, 506 So.2d 1040 (Fla. 1987).
The obvious legislative intent recognized by the court is to dissuade persons from taking advantage of a relationship which is perceived by the child as being one of authority. In the instant case, it is indisputable that a child who is in a vulnerable position, such as asleep in bed, could perceive that an adult member of the family who has access to the bedroom is in a position of authority.
The trial judge's exercise of discretion should not be disturbed. The opinion of the trial court is affirmed.
We feel, however, that it is important for the supreme court to address the standard to be utilized in determining the admissibility of collateral crime evidence in cases involving sexual battery within the familial context. The issue is the main point raised on appeal in many serious cases brought before the appellate courts of this state, and the supreme court has not addressed this issue since Beasley, supra. In addition, while Heuring and Beasley indicate that a different standard may be utilized in these types of cases, the standard is never specifically addressed. We, therefore, certify the following question to be one of great public importance:
WHAT IS THE CORRECT STANDARD TO BE UTILIZED IN DETERMINING THE ADMISSIBILITY OF COLLATERAL CRIME EVIDENCE IN CASES INVOLVING SEXUAL BATTERY WITHIN THE FAMILIAL CONTEXT?
BOOTH, SMITH, JOANOS, KAHN and LAWRENCE, JJ., concur.
MINER, J., concurring with written opinion with which BOOTH, WOLF, and LAWRENCE, JJ., concur.
ERVIN, J., concurring in part and dissenting in part with written opinion.
ALLEN, J., dissenting with written opinion with which ZEHMER, C.J., BARFIELD, WEBSTER, and MICKLE, JJ., concur.
MINER, J., concurring, with Opinion.
I fully concur with Judge Wolf's opinion and that portion of Judge Ervin's concurring and dissenting opinion which addresses the issue of whether the collateral crime evidence offered below was sufficiently similar to the charged offense to be admitted under the rationale of Heuring,[8]Calloway[9] and their progeny. Indeed, I believe Judge Ervin's scholarly analysis of this point to be both compelling and eminently correct. That said, however, I write to express another view of the record with respect to the basis offered by Judge Ervin for reversal and remand, i.e. because he finds nothing in the record that establishes the existence of a close and trusting family-type relationship between the appellant and the child victim.
As I understand it, the essence of the issue raised by Judge Ervin is how close and trusting a family-type relationship must be between an accused and a child victim before similar fact evidence is admissible to corroborate the testimony of the child? Since "close" and "trusting" are relative terms and cannot be applied in vacuuo, a careful review of the record in any case in which this issue arises must be made. Here, since no issue was made of the nature of the family-type relationship by appellant either below or on appeal, it seems only reasonable to conclude that so far as this appeal is concerned, such is a non-issue. Nonetheless, the record on appeal belies the conclusion reached by Judge Ervin.
L.J., the mother of the child victim, J., testified that her relationship with appellant was "friendly like  getting connections with the kids" (R. 104). Indeed, had this issue been raised below, the jury might have characterized this relationship as something more than "friendly like" in view of the fact that L.J. had given birth to two of appellant's daughters, M. and S.L.J. testified that she and her family had lived with appellant at a *37 time previous to the period of time during which the charged offense occurred (R. 114). Because J. was only three years old when his half-sister M. was born, (R. 75, 114), it seems logical to infer that appellant must have had continuing contact of a familial nature with J. during his mother's previous residence with appellant. L.J. also testified that J. liked appellant and "still" likes him (R. 129).
In his closing argument at trial (R. 232), appellant's counsel stated that, shortly before the charged offense occurred, J., his mother, L.J. and his two half-sisters (appellant's two children) showed up on appellant's doorstep, uninvited, with no place to stay and moved in with appellant. It seems to me highly unlikely that such would occur absent a family-type relationship. Lastly, both appellant and ten-year-old J. testified that they shared the same bed at appellant's house (R. 80, 92, 93, 205-206). If this record does not establish the type of close and trusting family-type relationship sufficient to permit corroborating similar fact evidence, it is difficult for me to envision a record that would.
ERVIN, Judge, concurring and dissenting.
Although I agree with the result advocated in Judge Allen's dissenting opinion, namely, that this case should be reversed and remanded for new trial, I do so for reasons different from those expressed therein. I would reverse and remand on the ground that the similar-fact evidence was erroneously admitted because the record fails to establish the existence of a familial-type relationship, and, therefore, the collateral-crime evidence did not meet the "strikingly similar" test required for the admission of same by Heuring v. State, 513 So.2d 122 (Fla. 1987).
My point of departure from Judge Allen's position is that the test he advocates appears to ignore the more relaxed standard approved in Heuring for admission of such evidence within a familial setting, and blends the two standards discussed in Heuring into virtually the same test. I think, therefore, that Judge Wolf's opinion represents the more correct legal statement of the effect of Heuring on the admission of similar-fact evidence than does Judge Allen's.
In my judgment, Judge Allen's position, which is little more than an argument for the test he would like the supreme court to adopt, is clearly at variance with Heuring. At page three of the dissent, he quotes from that portion of Heuring stating that "[t]he charged and collateral offenses must be not only strikingly similar, but they must also share some unique characteristic or combination of characteristics which set them apart from other offenses." Id. at 124. Reasoning therefrom, Judge Allen concludes that because the evidence relating to the collateral crime in the case at bar did not meet the above test, the trial court necessarily erred in admitting it. My understanding of the above language in Heuring, and, indeed, what appears to be the understanding expressed in a number of other decisions, see infra, is that this statement was made in the context of the rule generally applicable to the admission of similar-fact evidence where no evidence of a familial-type relationship is involved. In fact, the sentence in Heuring immediately preceding the quoted sentence relied upon by Judge Allen in his dissent states: "To minimize the risk of a wrongful conviction, the similar fact evidence must meet a strict standard of relevance." Id. The supreme court continued that "[c]ases involving sexual battery committed within the familial context present special problems." Id. It then concluded that the better approach in determining the admissibility of collateral-crime evidence in familial-type cases is to consider it admissible under the theory that it is relevant to corroborate the victim's testimony. Id. at 125.
Judge Allen, however, relying upon this court's opinion in Adkins v. State, 605 So.2d 915 (Fla. 1st DCA 1992), and while conceding that Heuring does not demand that the evidence in the charged and collateral crimes be "virtually factually identical," once proof of a familial relationship is established, nevertheless argues that the crimes must share "like characteristics." In stating that he is unable to discern any unique characteristic or combination of characteristics which sets the charged and collateral offenses apart from other offenses, Judge Allen again relies upon language in Heuring generally applicable to the admissibility of similar-fact evidence, and *38 not to the admissibility of such evidence within a familial context. He thereupon concludes that the evidence in the case at bar fails to meet even Heuring's more relaxed standard of similarity. I cannot agree.
Admittedly, as noted in Judge Allen's dissent, differences abide in the present case between the children's ages and genders, the time frames, and the locations. If the evidence at bar showed, for example, that similarities existed between the victims' ages and genders, but not between locations and times, would such evidence then comply with Judge Allen's "like characteristics" test? In other words, how many points of similarity should be enough or too little? The differences Judge Allen emphasizes would be significant if no close family-like relationship were revealed, but Judge Allen fails to make any such distinction. In my view, the amorphous, subjective standard Judge Allen advocates would, if adopted, have little predictability, and its application in any given case could vary with each individual trial judge and each reviewing panel.
If the evidence at bar had disclosed that the defendant stood in a familial or custodial position with the victims of both the charged and collateral crimes, I consider that the disputed similar-fact evidence could easily survive the Heuring test for admissibility. In so saying, I think that the supreme court implicitly recognized, when it lessened the strict standard of admissibility generally applicable to similar-fact evidence, that a close family-type situation frequently makes a child more susceptible to the venal advances of a child molester and thereby furnishes to such person a greater opportunity for carrying out his deviant intent.[10] I therefore do not read Heuring, as does the dissent, as requiring that the charged and collateral offenses share "more than just a causal resemblance."
Part of the difficulty in applying a "strikingly similar" test to cases involving child sexual abuse within a familial context is that such offenders "`are a heterogeneous group with few shared characteristics apart from a predilection for deviant sexual behavior.'" Flanagan v. State, 586 So.2d 1085, 1115 (Fla. 1st DCA 1991) (Ervin, J., concurring and dissenting) (quoting Myers, Bays, Becker, Berliner, Corwin & Seywitz, Expert Testimony in Child Sexual Abuse Litigation, 68 Neb. L.Rev. 1, 142 (1989)). My position is simply that once sufficient proof is presented establishing a familial-type relationship in a given case, the important similarity between the charged and collateral crimes is that the child victim in each situation is placed in an extremely vulnerable position, which makes him or her far more susceptible to the dissolute influence of adult family-type members, and such differences as gender, location, types of offenses, or time are simply immaterial to a reasoned decision regarding the admissibility of collateral crime-evidence under such circumstances.
If I am incorrect in this conclusion, my mistake is shared in opinions of both this court and other courts. See, e.g., Wilkerson v. State, 583 So.2d 428 (Fla. 1st DCA 1991) (admission of similar-fact evidence under relaxed Heuring standard approved, although the victim of the collateral crime stated only that she awoke to find the defendant unfastening her pajama bottoms, whereas the victim in the charged offense related that she awoke to find the defendant rubbing his hand on her private parts); Calloway v. State, 520 So.2d 665, 668 (Fla. 1st DCA), ("The rigidity with which the similarity requirement is applied in cases wherein the collateral crimes are introduced to prove a fact such as the identity of the perpetrator is not necessary in other situations such as the instant case where the evidence is relevant to corroborate the victim's testimony."), review denied, 529 So.2d 693 (Fla. 1988); Anderson v. State, 549 So.2d 807, 809 (Fla. 5th DCA 1989) (in prosecution of sexual battery upon defendant's *39 stepdaughter, the testimony of the victim's sister recounting only unsuccessful sexual advances, as well as other differences, was not fatal to the admission of the similar-fact evidence, as "[e]xact identity or similarity of crimes is not a requirement under Heuring"), review denied, 560 So.2d 232 (Fla. 1990); Stevens v. State, 521 So.2d 362 (Fla. 5th DCA 1988) (Cobb, J., concurring) ("[T]he [Heuring] court relaxed the strict standard of similarity required for admissibility under Williams when the offenses were committed within a familial context. In other words, the latter context supplies the uniqueness or `fingerprint' characteristic necessary for sufficient similarity under the Williams rule. In child molestation cases wherein there is no familial or custodial situation, prior instances of sexual abuse of children would still be inadmissible absent a unique similarity between the crimes.").
On the other hand, my disagreement with Judge Wolf's decision is with his assumption that a family-type tie existed between the victim and the defendant at the time of the commission of the offense. In my judgment, the record fails to disclose the kind of relationship between the child and the defendant that could accurately be described as close or trusting, thereby making the child particularly vulnerable to the venal advances of the defendant. See Coleman v. State, 485 So.2d 1342, 1346 & n. 2 (Fla. 1st DCA 1986), wherein, in interpreting the statutory language of Section 794.011(4)(e), Florida Statutes, proscribing sexual battery upon a child by a person in a familial or custodial position, we explained that the terms "familial" and "custodial" did not require a showing of consanguinity or affinity, but rather "that the legislature intended on a broad basis to protect minor children from the predatory influences of older persons who establish close family-type ties with them."
The information at bar alleges that between January 1, 1991 and February 18, 1991, the adult defendant committed a sexual battery upon the child victim, who was less than 12 years of age. The evidence in support thereof reveals that sometime after Christmas 1990, the child had moved into the house with his mother and her boyfriend, the defendant, and that the offense occurred shortly thereafter. The mother related that her son informed her of the act sometime between the middle of February and March 1, 1991. Yet, nowhere in the testimony of any witness is there evidence of a relationship between the defendant and victim which could be considered as custodial or familial, thereby affording the defendant with an enhanced opportunity to make sexual advances upon the child victim, who was made more susceptible to those acts by reason of such relationship.
Because it appears that no evidence was introduced below showing the existence of a familial or custodial relationship, as discussed by this court in Stricklen v. State, 504 So.2d 1248 (Fla. 1st DCA 1986), or Coleman, I would reverse the defendant's conviction and remand the case for new trial on the ground that the similar-fact evidence admitted failed to meet the general rule of admissibility applied to such evidence outside the familial context, in that it did not comply with the requirement that the charged and collateral offenses not only be strikingly similar, but also share some unique characteristic or combination of characteristics setting them apart from other offenses. Heuring, 513 So.2d at 124.
I concur, however, with Judge Wolf's opinion in certifying the question posed therein as one of great public importance.
ALLEN, Judge, dissenting.
Section 90.404(2)(a) provides:
Similar fact evidence of other crimes, wrongs, or acts is admissible when relevant to prove a material fact in issue, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, but it is inadmissible when the evidence is relevant solely to prove bad character or propensity.
The supreme court has said that admissibility of evidence under the foregoing provision is contingent upon the evidence meeting a "strict standard of relevance." Heuring v. State, 513 So.2d 122, 124 (Fla. 1987). This standard requires that the collateral crime evidence must meet two criteria. The circumstances *40 of the collateral crime must first be "strikingly similar" to those of the charged offense, and second, the collateral crime evidence must be relevant to an issue in the case. Id. In my view, the trial court reversibly erred in admitting the collateral crime evidence as similar fact evidence in this case because the collateral crime bears little similarity to the charged offense and thus fails the first requirement for admissibility.
In Heuring, the defendant was charged with sexual battery of his twelve-year-old stepdaughter. The prosecution introduced evidence that the defendant had sexually battered his natural daughter some twenty years earlier. After rejecting the argument that remoteness would preclude admissibility, the supreme court noted that in familial sexual battery cases "some courts" had relaxed the strict standard normally applicable to similar fact evidence and permitted such evidence to be introduced as relevant to modus operandi, scheme, plan, or design. The court, in conclusory fashion, determined that "the better approach treats the similar fact evidence as simply relevant to corroborate the victim's testimony, and recognizes that in such cases the evidence's probative value outweighs its prejudicial effect."
Most important for purposes of this case, the Heuring opinion does not provide guidance on how much or how little the collateral crime must resemble the charged offense to be admissible for the purpose of corroborating the victim's testimony.[11] The Heuring court did not recite the circumstances of the crime charged or the collateral crime, presumably because remoteness, rather than similarity, was at issue in that case. Thus, the supreme court did not reach the question of whether the similarity requirement should be relaxed, or, as the majority would apparently have it, effectively abandoned, in the context of familial sexual battery. However, both the leading commentator on Florida evidence and recent opinions from this court support the proposition that a strong showing of similarity still must be met prior to the admission of similar fact evidence in familial sexual battery cases.
In his treatise, Professor Ehrhardt explains his understanding of the supreme court's directive as to the level of similarity required where collateral crime evidence is offered to corroborate the testimony of a child victim of familial or custodial sexual abuse:
According to the court, when the similar acts upon family members share some unique characteristic or combination of characteristics which sets them apart from other offenses, the evidence will be admitted to bolster the credibility of the victim's testimony.
Ehrhardt, Florida Evidence, § 404.18 (1993 Edition) (emphasis added). This interpretation is consistent with the language of Heuring itself, which explained that in admitting similar fact evidence, "[t]he charged and collateral offenses must be not only strikingly similar, but they must also share some unique characteristic or combination of characteristics which sets them apart from other offenses." 513 So.2d at 124.
Similarly, recent cases in this court involving introduction of collateral crime evidence for the purpose of corroborating the testimony of child victims of sexual abuse have stressed the presence of similar facts between the charged offense and the collateral crime. For example, the court in Grant v. State, 577 So.2d 625 (Fla. 1st DCA 1991), concluded that collateral crime evidence was admissible because "the two victims shared in common a closely comparable age, the same relationship with the abuser, abuse involving primarily the appellant's oral contact with the genitals of the grandchildren, and because the incidents occurred in the workshop *41 on most occasions." And the court in Adkins v. State, 605 So.2d 915, 917 (Fla. 1st DCA 1992), indicated that the charged offense and the collateral offenses "involved children roughly the same age, who were related by marriage to the appellant; all events described took place during the same time frame and at night at the home where appellant was in custodial authority over the children; most significantly, appellant threatened bodily harm to all the children if they told."
Thus, while the similarity requirement does not demand that the two crimes be "virtually factually identical," the crimes must share "like characteristics." Id. at 919. As the court in Adkins notes, "`Similar' does not mean `exactly the same.'" Id. Rather, "`[s]imilar' means: `nearly corresponding, resembling in many respects, somewhat like, having a general likeness.'" Id. (emphasis added). It is thus apparent from both the definition of "similar" and the factual contexts of cases such as Grant and Adkins that more than just a casual resemblance is required for two acts to be "similar." And it is equally apparent that at some point the line must be drawn between that which is "similar" and that which is not. The facts of this case amply illustrate the need for such line drawing.
The victim in the charged offense was a ten-year-old boy who testified that he was living with his mother and the appellant in the appellant's house at the time of the incident. The boy was sleeping in a bed with the appellant when the appellant pulled down the boy's pants, got on top of him, put his "thing" inside the boy and began "humping" him. The boy testified that this activity occurred every night for a week while he was living at the appellant's house. The victim in the collateral crime was a twelve-year-old girl. The appellant was her mother's half-brother. The girl testified that she had spent the night at her aunt's house. In the morning, "before noon," she awoke when she felt the appellant touching her under her panties. She told him to leave and he did. (The kinship or other relationship between the girl's aunt and the appellant was never explained. Also unexplained were the circumstances surrounding the appellant's presence in the aunt's house.)
I am unable to discern any "unique characteristic or combination of characteristics which sets [these alleged offenses] apart from other offenses." The only thing the two offenses have in common is that both allegedly occurred upon the children being awakened from sleep in bed. Obviously, the fact that a sexual offense is committed in bed is not a "unique" circumstance setting that offense apart from other sexual offenses.
Indeed, the charged and collateral offenses do not share even a "general likeness" with one another. The cumulative dissimilarities are so striking as to completely overshadow any probative value of the collateral crime, other than merely indicating the appellant's propensity to commit sexual offenses against children. Aside from the obvious differences in the children's ages and genders, the relationships between the appellant and the children were completely different, the acts took place during different time frames, they took place at different locations, they took place at different times of day, and the acts themselves bear no resemblance to one another. Cf. Peek v. State, 488 So.2d 52 (Fla. 1986) (listing similarities and dissimilarities of charged and collateral crimes in determining collateral crime evidence inadmissible). I am therefore compelled to conclude that this evidence does not meet even a relaxed standard of similarity.
Nonetheless, the majority justifies admission of the evidence by speculating that the supreme court in Heuring and in Beasley v. State, 518 So.2d 917 (Fla. 1988),[12] while not specifically saying so, "determined that the collateral crime evidence was corroborative because it demonstrated what some commentators have described as `depraved sexual propensity.'" The majority then explains that "[t]he evidence is corroborative because *42 the fact that the perpetrator acted in a similarly depraved fashion in the past is predictive of his actions at other times." Then the majority quotes from a treatise which posits that two offenses are similar for purposes of proving propensity to commit a deviant sexual act if they both simply involve "deviant sexual behavior." Thus, the majority evidently embraces the notion that since all sexual offenses against young children involve deviant sexual behavior, such evidence will always be admissible, regardless of any lack of actual similarity between the crimes.
If I agreed with the majority's view that the supreme court has authorized the use of collateral crime evidence to prove deviant sexual propensity, I would have no difficulty in concluding that the collateral crime evidence in this case is sufficiently "similar" to be admissible. After all, if collateral crime evidence is offered merely to prove that a defendant has the propensity to commit a sexual offense against a child, the only similarity required of the collateral crime is that it be a sexual offense against a child.
But I cannot agree with the major premise of the majority's reasoning: that Heuring and Beasley authorize propensity evidence in cases involving sexual offenses against children in the familial setting. As the majority acknowledges, neither Heuring nor Beasley directly says that propensity evidence will be admitted in such cases. Indeed, such a holding would squarely conflict with the express language of section 90.404(2)(a), prohibiting admission of similar fact evidence solely to prove propensity. Moreover, such a holding would conflict with the supreme court's own seminal case on similar fact evidence, Williams v. State, 110 So.2d 654 (Fla. 1959), cert. denied, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959), wherein the court repeatedly said that similar fact evidence of collateral crimes is not admissible solely to prove bad character or propensity. Id. at 660 and 662. Had the supreme court intended so significant a departure from a firmly established principle, it surely would have said so in clear and unambiguous terms.
The majority seems to be of the view that any collateral crime evidence which would serve to corroborate the testimony of a child victim of sexual assault is actually nothing more than evidence of the defendant's propensity to commit sexual assaults against children. I do not share this view. Where collateral crime evidence goes beyond merely showing that a defendant in a familial child sexual assault case has committed a sexual assault upon another child family member and additionally shows that the circumstances of the collateral crime share a unique characteristic or set of characteristics with the charged crime, the evidence serves to prove more than mere propensity. Such evidence bolsters the credibility of the child witness in the charged crime, not because the evidence simply shows the defendant's propensity to commit sexual assaults upon children, but because it is unlikely that the victim in the charged crime could have fabricated a version of events which shares unique characteristics with the collateral crime. I believe that such uniquely similar collateral crime evidence is the type of evidence the supreme court had in mind when it authorized the admission of similar fact collateral crime evidence to bolster the credibility of child victims of familial sexual assaults. Because the charged and collateral crimes in this case were not uniquely similar, the collateral crime evidence should not have been admitted.
NOTES
[1] The victim of the collateral crime testified during the proffer that appellant was her mother's half brother and that she considered him to be an uncle; at trial she testified that appellant was her mother's brother and that she considered him to be her uncle.
[2] There is no indication that the victim in the charged crime protested or told appellant to stop.
[3] It should also be noted that a detailed account of the collateral crime was not presented by the prosecution which apparently recognized that the collateral crime should not be made a feature of this case. See Travers v. State, 578 So.2d 793 (Fla. 1st DCA 1991), rev. denied, 584 So.2d 1000 (Fla. 1991); Turtle v. State, 600 So.2d 1214 (Fla. 1st DCA 1992). Appellant should not be allowed to rely on this lack of detail.
[4] It should also be noted that the trial judge in the instant case excluded collateral crime evidence concerning another victim who testified that she was attacked in bed when the judge determined there was insufficient similarity between offenses, and it was unclear what relationship existed between the victim and the appellant.
[5] In Thomas v. State, 599 So.2d 158 (Fla. 1st DCA), rev. denied, 604 So.2d 488 (Fla. 1992), the court seems to indicate that Heuring stood for the proposition that the "strikingly similar" test was applicable in familial sexual battery cases. Thomas, however, is not controlling in this and other familial sexual battery cases as the court in that case specifically found that no familial relationship existed.
[6] Indeed, literature on the subject seems to indicate that the gender of the child appears to make no difference insofar as proclivities of the abuser. See Myers, Bays, Becker, Berliner, Corwin, and Saywitz, Expert Testimony in Child Sexual Abuse Litigation, 68 Neb.L.Rev. 1 (1989).
[7] This argument was not made by appellant at the trial or appellate level. Appellant apparently properly conceded that the collateral crime occurred in a familial context.
[8] Heuring v. State, 513 So.2d 122 (Fla. 1987).
[9] Calloway v. State, 520 So.2d 665 (Fla. 1st DCA), rev. denied, 529 So.2d 693.
[10] Frankly, I think that the supreme court in Heuring could have reached the same result in applying its more relaxed standard to the admission of similar-fact evidence within a familial-type context by following the parameters of Section 90.404(2)(a), Florida Statutes, and thereby adopting the rule that such evidence is relevant under the theory that it tends to show that the defendant, because of such relationship, was afforded the opportunity to sexually assault the child-victim, rather than under the theory that it is relevant for the purpose of corroborating the victim's testimony.
[11] The majority relies heavily on Calloway v. State, 520 So.2d 665 (Fla. 1st DCA), rev. denied, 529 So.2d 693 (Fla. 1988), to argue that the similarity requirement does not bar admission of the evidence in this case. However, although the court in Calloway recites the circumstances of the collateral crimes and indicates that the collateral crime evidence was offered to corroborate the testimony of the child victim in the charged offense, it does not state the facts surrounding the charged offense. Thus, when the court concludes that "there was sufficient logical connection between the collateral offenses and the charged offenses," id. at 668, the legal conclusion has no factual context and offers no guidance for cases such as the present one.
[12] In Beasley v. State, 518 So.2d 917 (Fla. 1988), the supreme court merely reiterated its recent decision in Heuring and held that where "the location, times, acts, and methods employed on both girls were substantially the same," the similar fact evidence of the victim's sister was admissible to corroborate the victim's testimony.